# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**SHERRY LEVY**                                                                                                            **PLAINTIFF**

**V.**                       **CASE NO. 3:15CV00043-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Sherry Levy appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Supplemental Security Income ("SSI") benefits under Title XVI of the Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.     Background**

On May 19, 2009, Ms. Levy protectively filed for SSI benefits due to seizures, degenerative bone disease, lumbar strain, nerve problems, depression, high blood pressure, sleep problems, arthritis, memory problems, using a cane, six car wrecks, hysterectomy, and chronic muscle spasms. (Tr. 303) Ms. Levy's claims were denied initially and upon reconsideration. An Administrative Law Judge ("ALJ") denied Plaintiff's claims in a February 16, 2012 decision, but the ruling was remanded by the Appeals Council. (Tr. 120-135, 136-139) Upon remand, the ALJ held a second hearing on July 10, 2013, and heard testimony from Plaintiff, her husband, and a vocational expert ("VE"). (Tr. 77-117)

The ALJ issued a decision on September 25, 2013, finding that Ms. Levy was not disabled under the Act. (Tr. 12-26)  On October 22, 2014, the Appeals Council denied Ms. Levy's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Levy, who was forty-six years old at the time of the hearing, has some college credits and past relevant work experience as a sales associate and substitute teacher (Tr. 79, 104-105)

## II.   Decision of the Administrative Law Judge[1]

The ALJ found that Ms. Levy had not engaged in substantial gainful activity since May 19, 2009 and that she had the following severe impairments: seizure disorder, obesity, disorder of the back/spine, and osteoarthritis of the right knee and hip. (Tr. 14) The ALJ also found that Ms. Levy did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (Tr. 14)

According to the ALJ, Ms. Levy had the residual functional capacity ("RFC") to perform sedentary work, except that she should avoid unprotected heights, large bodies of

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 416.920(a)-(g).

[2] 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.

water, and dangerous moving machinery. She was capable of occasional kneeling, crouching, and crawling and frequent stooping, balancing, and climbing. (Tr. 17) The VE testified that an individual with these limitations could work as a telephone quote clerk, charge accounts clerk, and final assembler. (Tr. 111-113)

After considering the VE's testimony and other evidence, the ALJ determined that Ms. Levy could perform a significant number of other jobs existing in the national economy, and found that Ms. Levy was not disabled.

### III. Analysis

#### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. Ms. Levy's Arguments for Reversal

Ms. Levy argues that the Commissioner's decision should be reversed because the ALJ: (1) failed to develop the record regarding the seizures; and (2) improperly rejected a nurse practitioner's opinion. (Docket entry #11)

### 1. Developing the Record on Seizures

Ms. Levy maintains that the ALJ failed to develop the record sufficiently to consider whether her seizures meet Listings 11.02 or 11.03. Among other things, both listings require that seizures persist despite at least three months of prescribed treatment. The problem here, as the ALJ noted, is that Ms. Levy repeatedly failed to take her seizure medications as prescribed.

It appears that many of her episodes directly corresponded with her failure to properly take her medicine. For example, in December 2008, Ms. Levy had a seizure "while marching in a Christmas parade." She reported that she had missed recent doses of her seizure medication, and the lab showed that her Dilantin level was extremely low. (Tr. 415, 423) Dilantin levels were low again in February 2009, when Ms. Levy had her next seizure. (Tr. 485, 489) She had a seizure again in June 2009, and the lab report again indicated that her medication levels were low. (Tr. 715) The treating doctor noted that Ms. Levy needed better medication compliance. (Tr. 720) Ms. Levy's Dilantin levels were incorrect again in September 2010, October 2010, May 2011, and June 2011 (Tr. 658, 736-737, 805, 878, 890) In January 2012, she had another seizure, but she had been out of medications for a few days. (Tr. 915) Notes from April of 2012 indicated

4

that Ms. Levy had "not been taking dilantin as prescribed . . . ."  (Tr. 907)  In November of 2012, she reported that she had skipped a dose a few days earlier, and subsequently had a seizure.  (Tr. 897)  Nearly every time she had a seizure, the time corresponds with improper levels of anti-seizure medication in her system.  Because it does not appear that Ms. Levy had seizures when she took her medication as prescribed for three months straight, she met neither listing.  Additionally, "A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

Ms. Levy also argues that the ALJ should have developed the record regarding her medication compliance issues.  Further development of the record was not required because the objective evidence already before the ALJ reveals that Ms. Levy simply did not take her medications as directed.  In fact, she testified that she often forgot to take her medications.  (Tr. 66, 68)

### 2. Nurse Practitioner

Ms. Levy asserts that the ALJ improperly rejected the opinion of her treating nurse practitioner.  In a July 8, 2013 letter, Casey Fincher, ANP, advised that Ms. Levy "continue[s] to have daily seizures and chronic [lower back pain].  She is disabled and unable to maintain gainful employment."  (Tr. 946)

As the ALJ correctly pointed out, Ms. Fincher's statements regarding the frequency and severity of Ms. Levy's impairments are not supported by the record as a whole.  There is no indication that Ms. Levy had seizures on a daily basis.  Additionally,

as noted, Ms. Levy's seizures and back pain were controlled when she properly took her medications. "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

Additionally, as the ALJ noted, there were "no neurological findings that could produce chronic, disabling, low back pain . . . ." (Tr. 24) In fact, a June 2012 x-ray revealed proper alignment of the lumbar spine. (Tr. 969) There are several references to Ms. Levy's need to diet, since she was 5'6" and weighed 250 pounds. Her weight does not appear to have ever significantly dropped, and this extra weight exacerbated any lower back pain. (Tr. 893, 895, 898)

Finally, Ms. Levy had traveled internationally on several occasions over the previous few years. (Tr. 108-109, 899, 980) This activity directly contradicts her claim that she was unable to perform sedentary work. (Tr. 108-109, 899, 980)

### IV. Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, as well as the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, Ms. Levy's appeal is DENIED, and the Clerk of Court is directed to close the case.

IT IS SO ORDERED, this 27th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE